UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BARBARA R. BAKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-02197-RLY-TAB |
| | ) |
| DOLLAR GENERAL | ) |
|    d/b/a DOLGENCORP, LLC, | ) |
| DOLGENCORP, INC., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' MOTION
TO ENFORCE SETTLEMENT AGREEMENT**

**I.   Introduction**

Defendants Dollar General and Dolgencorp, Inc. seek to enforce a purported settlement agreement with Plaintiff Barbara Baker in this negligence action asserting claims for personal injuries Baker sustained in Defendants' store. [Filing No. 16.] Sometimes disputes on enforcement of a settlement agreement are close. This one is not. The only evidence Defendants have provided of the purported agreement are a couple rambling voicemails, from an attorney whose mental state at that time is now in dispute, which mention settlement figures that differ from the settlement Defendants now claim the parties reached. There is no consensus that a purported agreement was within reach, let alone on the specific details of any such agreement. Accordingly, there is no agreement that the Court can enforce. Thus, for reasons stated below, Defendants' motion is denied.

**II.     Background**

Much of the pertinent procedural background in this matter began months before Baker ever filed the underlying lawsuit. Defendants received a letter from attorney William Levy on October 14, 2019, stating that he represented Baker for her claim for personal injuries sustained in Defendants' store on September 13, 2019. [Filing No. 16, at ECF p .1.] Levy and Defendants' counsel traded settlement demands in April 2020. Levy initially demanded $250,000 for settlement of Baker's injury claim in an April 7, 2020, letter, noting that Plaintiff had accrued over $98,000 in medical bills at that time. [Filing No. 16-1, at ECF p. 10.] Defendants responded by offering $5,000. [Filing No. 16, at ECF p. 2.] In the months that followed, Levy left voicemails and communicated with Defendants' counsel in phone conversations that allegedly resulted in an agreed upon settlement of $6,500. [Filing No. 16, at ECF p. 2.]

Defendants claim: "On June 11, 2020, Atty. Levy and [Defendants' counsel] had a phone call where the two parties agreed on a settlement in the amount of $6,500. Pursuant to the discussion, Atty. Levy would forward his acceptance letter along with the desired hold-harmless language." [Filing No. 16, at ECF p. 2.] However, on July 3, 2020, Defendants' counsel received a letter from another attorney at the same firm claiming that he now represented Baker, Levy was taking a leave of absence from the firm, and Baker's case had been grossly undervalued. [Filing No. 16, at ECF p. 2.] Thus, Baker's new counsel withdrew all offers Levy had made on Baker's behalf. [Filing No. 16, at ECF p. 2.] Subsequently, on July 17, 2020, Baker filed her personal injury lawsuit. [Filing No. 1, at ECF p. 2.]

On November 2, 2020, Defendants filed the pending motion to enforce settlement. [Filing No. 16.] In response, Baker provided additional background information to dispute Levy's mental capacity at the time of the purported settlement discussions and her alleged

2

agreement to any purported terms. [Filing No. 30.] She attached affidavits from Levy's daughter and physician confirming these medical and personal facts. [Filing No. 29-2, Filing No. 29-3.] Baker noted that in January 2020, Levy's wife died, which devasted Levy, who at the time was 90 years old. [Filing No. 30, at ECF p. 1.] In May, Levy developed a urinary tract infection, which left him hospitalized and suffering from hallucinations. [Filing No. 30, at ECF p. 2.] Levy also suffered from dementia, which worsened during this time. [Filing No. 20, at ECF p. 2.] Baker unequivocally denies ever approving to settle her case for $6,500. [Filing No. 30, at ECF p. 3.]

**III. Analysis**

First, the Court must determine whether an agreement even exists, and then, if so, whether it should be enforced. *See, e.g., Smith v. Peterson*, No. 1-19-cv-04671-SEB-TAB, 2020 WL 6701284, at *2 (S.D. ind. Nov. 10, 2020) ("A federal court's authority over a case pending before it includes authority to enforce a settlement agreement that the parties have executed but not satisfied. A court must first determine as a matter of law whether an agreement exists. The court must then determine, as a matter of discretion, whether the agreement should be enforced." (Internal citations and quotation marks omitted)); *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 998 (7th Cir. 2001) ("Although a contract can be formed even though the precise language is not worked out and put into writing until sometime later, there must at least be some agreement as to what it will say.").

Defendants claim that "the clear and convincing evidence in this case establishes that the parties have a valid, enforceable settlement agreement by which Baker is bound." [Filing No. 16, at ECF p. 4.] However, Defendants' motion lacks the necessary evidentiary basis to support this conclusion. While Defendants claim the two sides came to an agreement of $6,500, the

3

voicemails Defendants provided to the Court indicate varying amounts of $7,000 and $7,500. [Filing No. 16, at ECF p. 2.] None of the recordings mentions settling the case for $6,500, and Defendants do not make any argument to suggest otherwise. Similarly, Defendants have provided no written correspondence showing confirmation that the parties reached a settlement of $6,500 or a settlement draft for such amount.

Even if the Court accepts the facts Defendants provided as accurate, those facts raise many questions as to the reasonableness of the purported agreement. For instance, the documents provided by Defendants indicate Baker's counsel provided an initial settlement demand of $250,000 and that Baker's medical bills were approximately $98,000. [Filing No. 16-1, at ECF p. 10, 12.] Despite this evidence, Defendants insist that Baker agreed to settle her claim for a mere $6,500. The substantial disparity in these numbers further suggests that the agreement Defendants seek to have the Court enforce is unreasonable.

Furthermore, Defendants claim that Plaintiff's counsel, Levy, was supposed to draft the release language in the agreement. [Filing No. 16, at ECF p. 16] ("Pursuant to the discussion, Atty. Levy would forward his acceptance letter along with the desired hold-harmless language."). It is hardly reasonable to assume that a corporate defendant would rely on a plaintiff's counsel to draft its release. As Baker points out, "[c]orporations or insurance companies always draft or use their own forms for a release of claims. Drafting the release for the defendant is not the sort of task delegated to plaintiff's counsel." [Filing No. 30, at ECF p. 11.] Defendants' claim runs contrary to the undersigned magistrate judge's experience in settling thousands of cases, which typically involve a defendant drafting its own release language for the plaintiff's signature.

Finally, Baker's response raises further cause for concern. Baker argues that she never approved settling her case for $6,500 and that she would not have continued to utilize Levy as

4

her counsel had she known he was suffering from dementia. [Filing No. 30, at ECF p. 3.] Baker's response brings into serious question to Levy's mental state at times relevant to these purported pre-suit settlement discussions. The pre-suit settlement discussions between Levy and Defendants' counsel are not evidence of a settlement and fail to demonstrate a "meeting of the minds" as to the terms of a final settlement. *See, e.g., Magallanes v. SBC*, 472 F.3d 923, 924 (7th Cir. 2006) ("A valid and enforceable settlement agreement requires a meeting of the minds on all material terms. . . . There is nothing in the record to support the conclusion that the parties had settled. Particularly, there was no evidence that Magallanes knowingly and voluntarily consented to a settlement; there was no evidence that Magallanes had authorized Goldman to settle under any terms; and there was no evidence as to any settlement terms.").

As Baker poetically states, "[t]he parties were metaphorically two ships passing in the night." [Filing No. 30, at ECF p. 6.] Not only did these ships pass at night, it appears they were sailing in different oceans. It is not even clear that Baker realized her ship had left the dock or authorized any such passage. At best, there is a dispute as to Levy's mental capacity, no evidence of correspondence confirming a settlement for $6,500, and an unequivocal denial from Baker of ever approving to settle her case for $6,500 (or any amount), which further indicates that the Court should not enforce the proposed settlement. Accordingly, Defendants' motion to enforce the settlement agreement is denied.

**IV.     Conclusion**

This is not a case involving material disagreements on the contents of a purported settlement agreement.  Nor does this case involve one party trying to get out of an agreement simply because they changed their mind.  Rather, this case involves a party attempting to enforce a lopsided agreement that never existed.  For the reasons stated above, Defendants' motion to enforce settlement agreement [Filing No. 16] is denied.

Date: 1/21/2021

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email